**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RHONDA K. ALVAREZ**<br>3283 Darrell Court<br>Reynoldsburg, Ohio 43068<br><br>       Plaintiff,<br><br>   v.<br><br>**DITECH FINANCIAL, LLC**<br>c/o CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>       Defendants. | CASE NUMBER: 2:16-cv-311<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

**COMPLAINT FOR MONEY DAMAGES,
INJUNCTIVE, AND DECLARATORY RELIEF**

**JURY DEMAND ENDORSED HEREON**

    The following allegations are based upon Plaintiff, Rhonda K. Alvarez's ("Ms. Alvarez's") personal knowledge, the investigation of counsel, and information and belief. Ms. Alvarez, through counsel, alleges as follows:

**I.   INTRODUCTION**

1. Ms. Alvarez had reason to believe that the servicer to her mortgage loan, Defendant Ditech Financial, LLC ("Ditech"), had committed accounting errors, issued incorrect monthly billing statements, billed for the incorrect monthly payment amount, caused escrow accounting errors, misapplied funds, charged excessive fees, and failed to properly service her mortgage loan in accordance with the underlying note, mortgage, and Federal Law.

2. Ms. Alvarez entered into a permanent loan modification on August 30, 2013.

1

3. The loan modification contract contained a payment of $744.90 per month.

4. Ms. Alvarez made payments of $744.90 pursuant to the permanent loan modification contract to Ditech.

5. Ditech continuously billed Ms. Alvarez for a payment of $981.44 per month.

6. Ms. Alvarez was afraid that Ditech would consider her monthly payment to be a partial payment, deem the account to be in default, and institute foreclosure proceedings.

7. Ms. Alvarez was afraid that Ditech would demand payment of the difference between the $981.44 amount billed by Ditech and her loan modification payment amount of $744.90 in one lump sum which she could not afford to pay.

8. Ms. Alvarez exercised her legal rights pursuant to RESPA to cause Ditech to review and correct her account billing.

9. Despite being placed upon actual notice of the clear billing error, Ditech failed and refused to correct the error.

10. Ms. Alvarez sent Ditech a qualified written request ("QWR") containing a notice of errors and a request for information regarding the servicing of her mortgage loan.

11. Ditech failed to adequately respond to Ms. Alvarez' QWR regarding a notice of errors and request for information regarding the servicing of her mortgage loan.

12. As a direct and proximate result of its failure to adequately respond to the Ms. Alvarez' QWR, Ditech violated RESPA and is liable to the Ms. Alvarez for damages.

13. Ditech failed to provide all of the notices and disclosures to Ms. Alvarez as required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* concerning her Mortgage Loan.

14. Ms. Alvarez institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action for Ditech's multiple, separate violations of the RESPA, 12 U.S.C. § 2601, *et seq.* and for Ditech's violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.*

## II. JURISDICTION

15. This Court has Federal Question jurisdiction pursuant to RESPA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

16. This Court has supplemental jurisdiction over Ms. Alvarez's state law claims pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the United States District Court for the Southern District of Ohio because all defendants conduct business in this District, the acts which gave rise to this lawsuit occurred in this District, and the real property that is the subject of this action is situated in this District.

## III. PARTIES

18. Ms. Alvarez is a natural person living within this Court's jurisdiction at 3283 Darrell Court, Reynoldsburg, Ohio 43068.

19. Ms. Alvarez is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to the allegations herein.

20. Ditech is a limited liability company organized under the laws of the State of Delaware.

21. Ditech was the servicer of Ms. Alvarez' mortgage loan within the meaning of RESPA at 12 U.S.C. § 2605(i)(2) at all times relevant to the allegations herein.

22. Ditech provided servicing of Ms. Alvarez' mortgage loan within the meaning of RESPA at 12 U.S.C. § 2605(i)(3) at all times relevant to the allegations herein.

23. Ditech received periodic payments from the Ms. Alvarez pursuant to the terms of the mortgage loan including; but not limited to, escrow, principal, interest, and other charges.

24. Servicing includes but is not limited to collecting payments, maintaining an escrow account, paying property taxes, paying hazard insurance, responding to qualified written requests, enforcing lender rights, and reviewing loss mitigation options for the borrower.

25. Ms. Alvarez's mortgage loan was originated by Strategic Mortgage Company in whole or in part by deposits and accounts which were insured, guaranteed, supplemented or assisted by an agency of the Federal Government.

26. Ms. Alvarez's mortgage loan was secured by a lien on residential real property principally designed for occupancy for one to four families.

27. Ms. Alvarez's mortgage loan is a federally related mortgage loan within the meaning of RESPA at 12 U.S.C. § 2602(1) *et. seq.*, at all times relevant to the allegations herein.

### IV. FACTUAL ALLEGATIONS

28. Ms. Alvarez incorporates all other paragraphs in this Complaint by reference as though fully written herein.

29. Each allegation against Ditech is also an allegation of action or inaction by the entity's agents, predecessors, successors, employees, contractors, assignees, and servicers, as appropriate.

30. Ms. Alvarez purchased residential real property commonly known as 3283 Darrell Court, Reynoldsburg, Ohio 43068 ("Darrell Property") by survivorship deed with general warranty covenants recorded in the Franklin County, Ohio Recorder's Office on July 22, 2003.

31. On July 18, 2003, Ms. Alvarez financed the Darrell Property through Strategic Mortgage Company with a note secured by a mortgage ("the Note") ("the Mortgage") (collectively, "the Mortgage Loan"). A copy of the alleged Note and Mortgage are attached hereto and incorporated herein as Exhibits A and B.

32. On February 10, 2012, Cecilio A. Alvarez deeded his interest in the Darrell property to Ms. Alvarez. The deed was recorded at the Franklin County Recorder's Office on November 5, 2012. A copy of the quit claim deed is attached hereto and incorporated herein as Exhibit C.

33. Mortgage Electronic Systems, Inc. assigned the Mortgage Loan to Everbank on February 4, 2013. A copy of the assignment is attached hereto and incorporated herein as Exhibit D.

34. Everbank and Ms. Alvarez entered into a permanent loan modification contract pursuant to the Home Affordable Modification Program ("HAMP") on August 30, 2013. A copy of the loan modification contract without signatures is attached hereto and incorporated herein as Exhibit E.

35. Everbank failed to record the permanent loan modification.

36. Ditech failed to record the permanent loan modification.

37. Everbank assigned the Mortgage Loan to Green Tree Servicing LLC on August 20, 2015. A copy of the assignment is attached hereto and incorporated herein as Exhibit F.

38. In August, 2015, Green Tree Servicing, LLC and Ditech Mortgage Corporation merged to form Ditech Financial, LLC.

39. Green Tree Servicing, LLC did not notify Ms. Alvarez that the servicing of her mortgage loan was transferred to Ditech Financial, LLC.

40. Ms. Alvarez made multiple attempts to correct the Ditech's servicing errors, obtain information, and correct the payment amounts demanded on Ditech's monthly mortgage statements.

41. Ditech failed to correct the account errors, provide information, investigate specific errors, and correct the monthly payment amount that transpired during the period of time Ditech serviced the loan.

42. On December 4, 2015, Ms. Alvarez, through counsel, sent a letter to Ditech.

43. Ditech received the letter on December 7, 2015.

44. The December 4, 2015 letter was a qualified written request sent pursuant to RESPA. A copy of the QWR with its enclosures omitted is attached hereto and incorporated herein as Exhibit G.

45. Ditech received the QWR on December 7, 2015.

46. The letter contained Ms. Alvarez's name, property address, and account number.

47. The QWR contained Ms. Alvarez's name, property address, and account number.

48. The letter constituted a qualified written request ("QWR") within the meaning of RESPA at 12 U.S.C. § 2605(e)(1)(B).

49. Ms. Alvarez' QWR contained six (6) notice of errors in sufficient detail regarding the Mortgage Loan account.

50. Ms. Alvarez' QWR requested information from Ditech separated into fourteen (14) enumerated topics relating to the servicing of her Mortgage Loan.

51. The QWR contained a request for the name, address, and telephone number of the owner of her note pursuant to TILA, 15 U.S.C. § 1641(f)(2).

52. A servicer can validly respond to a QWR in three (3) ways. First, a servicer can make corrections to the account 12 U.S.C. 2605(e)(2)(A). Second, a servicer, following an investigation, can explain or clarify why the account is already correct 12 U.S.C. 2605(e)(2)(B). Third, a servicer can, after an investigation, provide the borrower with a written explanation or clarification that includes information requested and explain why information not provided cannot be obtained or provided by the servicer 12 U.S.C. 2605(e)(2)(C).

53. A servicer must take one of the three (3) actions within thirty days excluding weekends and public holidays pursuant to 12 U.S.C. 2605(e)(2)(A)-(C).

54. Ditech acknowledged the receipt of the QWR by letter dated December 8, 2015. A copy of Ditech's acknowledgment letter is attached hereto and incorporated herein as Exhibit H.

55. Ditech attempted to respond to the notice of error and request for information in the QWR by letter dated December 15, 2015. A copy of Ditech's response letter with enclosures omitted is attached hereto and incorporated herein as Exhibit I.

56. Ditech failed to correct the errors Ms. Alvarez described in the QWR.

57. Ditech failed to correct the monthly payment amount.

58. Ditech continued to demand a payment of $981.44 when the correct monthly amount pursuant to the loan modification contract was $744.90. Copies of monthly mortgage statements are attached hereto and incorporated herein as Exhibits J.

59. Ditech ceased issuing monthly statements to Ms. Alvarez. Neither Ditech nor Everbank provided Ms. Alvarez with a monthly mortgage statement for either the months of March and April 2016.

60. Ditech and Everbank's failure to provide Ms. Alvarez with her monthly mortgage statement further confused Ms. Alvarez and caused her fear and other distress concerning the status of her Mortgage Loan.

61. Ditech failed to explain completely why it believed the account was already correct.

62. Ditech failed to provide all the information Ms. Alvarez requested in the QWR.

63. Ditech failed to investigate the errors Ms. Alvarez asserted in the QWR.

64. Ditech failed to provide Ms. Alvarez with a written explanation or clarification that includes the information requested and explain why information not provided cannot be obtained or provided by Ditech.

65. Ditech's response to the QWR merely included an assignment of mortgage, two annual escrow account disclosure statements, the Mortgage, the Note, two copies of the notice of mortgage servicing transfer from Everhome Mortgage to Green Tree Servicing LLC, and a payment history from May 2014 to December 2015.

66. Ditech's response to the QWR did not include any steps taken to investigate the notice of errors and request for information requested in the QWR.

67. As a direct and proximate result of Ditech's failure to properly respond to the QWR and by its failure to correct to the errors to her account, improper fees, charges, and interest remained on the account resulting in actual damages to Ms. Alvarez in the increased amounts she allegedly owes on the account.

68. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ditech continued to bill Ms. Alvarez for $981.44 instead of $741.44.

69. Ditech failed to correct the monthly statement due amount resulting in Ms. Alvarez suffering actual damages in the fear of default, anxiety over foreclosure, and the fear that Ditech would demand a lump sum due and owing that she could not afford to pay.

70. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ms. Alvarez suffered actual damages of emotional distress in the form of anxiety, fear, distress, mental anguish, sleepless nights and a reduction of her credit rating.

71. As a direct and proximate result of Ditech's failure to properly respond to the QWR Ms. Alvarez has suffered actual damages for postage in the amount of $3.94.

72. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ms. Alvarez has suffered actual damages in the form of attorney fees in the amount of $1,301.05 for the drafting the QWR Letter and reviewing Ditech's response to the QWR Letter. All costs were incurred for naught due to Ditech's failure to comply with RESPA.

## V. RESPA VIOLATIONS:

73. Ms. Alvarez incorporates all other paragraphs in this Complaint by reference as though fully written here.

74. Ditech committed multiple, separate violations of RESPA.

75. Ditech failed to properly respond and correct errors to Ms. Alvarez's QWR in violation of RESPA at 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35 *et. se*q.

76. Ditech violated RESPA by failing to respond to each paragraph as a whole and each subpart of each paragraph in the notice of errors in Ms. Alvarez's QWR.

77. Ditech violated RESPA by failing to properly respond and provide information to Ms. Alvarez's QWR in violation of RESPA at 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36 *et. seq.*

78. Ditech violated RESPA by failing to acknowledge, explain, or provide any response to the requests for information listed in the Ms. Alvarez's QWR.

79. Ditech violated RESPA by failing to respond to each assertion as a whole and each subpart of each paragraph in the request for information in the QWR.

80. Ditech violated RESPA by failing to respond to each request for information contained in the QWR.

81. Ditech failed to provide Ms. Alvarez all notices required under RESPA regarding the servicing of her Mortgage Loan.

82. Ditech has engaged in a pattern and practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 by violating multiple provisions of RESPA in Ms. Alvarez's case and with its other borrowers.

83. As a direct and proximate result of Ditech's failure to properly respond to the QWR and by failing to correct to the errors to her account; improper fees, charges, and interest thereon remained on the account resulting in actual damages to the Ms. Alvarez in the increased amounts they now allegedly owe on the account after transfer to the new owner.

84. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ms. Alvarez has suffered actual damages of emotional distress in the form of anxiety, fear, distress, sleepless nights, mental anguish, and reduced credit rating.

85. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ms. Alvarez has suffered in an amount equal to the time and effort expended, the expenses accrued in connection with preparing and submitting the QWR Letters, the expenses accrued in connection with reviewing the responses and lack of responses to the QWR

Letters, including the expenses for preparing, photocopying, sending the QWR Letters via certified mail, and obtaining all copies of the correspondence.

86. As a direct and proximate result of Ditech's failure to properly respond to the QWR Ms. Alvarez has suffered actual damages for postage in the amount of $3.94.

87. As a direct and proximate result of Ditech's failure to properly respond to the QWR, Ms. Alvarez has suffered actual damages in the form of attorney fees in the amount of $1,301.05 for the drafting the QWR Letter and for reviewing Ditech's response to the QWR Letter. All costs were incurred for naught due to Ditech's failure to comply with RESPA.

88. Due to Ditech's actions and non-actions, Defendant is liable to Ms. Alvarez in the amount of her actual damages, the maximum statutory damages available of at least $2,000 for each RESPA violation, attorney fees, and the costs of this action pursuant to 12 U.S.C. § 2605(f).

**V. CSPA VIOLATIONS:**

89. Ms. Alvarez incorporates all other paragraphs in this Complaint by reference as though fully written here.

90. Ms. Alvarez financed the purchase of her Home, her principal residence, with funds she obtained from the Mortgage Loan originated by Strategic Mortgage Company.

91. Ms. Alvarez is an individual "consumer" as defined by Ohio Revised Code Section 1345.01(B) and (D) at all times relevant to the allegations herein.

92. Ditech is a "supplier" engaged in the business of effecting or soliciting consumer transactions as defined by Ohio Revised Code Section 1345.01(C).

93. As a limited liability company and the purported assignee of the Mortgage, Ditech is a nonbank mortgage lender.

94. Ditech, a limited liability company, is not a financial institution or dealer in intangibles as defined in R.C. 5725.01.

95. Ditech was a supplier as that term is defined in the CSPA from when it took assignment of the Note and Mortgage from Everbank.

96. The exchange of goods and services between Ms. Alvarez and the Ditech constitutes a "consumer transaction" as defined by Ohio Revised Code Section 1345.01(A).

97. The servicing of the Mortgage Loan by Ditech, the purported holder of the obligation and nonbank mortgage lender, is and was a consumer transaction as that term is defined in the CSPA at all times relevant to the allegations herein. *Powers v. Green Tree Servicing, L.L.C.*, 2015-Ohio-3355, ¶ 15 (8th Dist. Ct. App.)

98. Ms. Alvarez's dealings with Strategic Mortgage Company were a consumer transaction at all times relevant to the allegations herein.

99. Ditech was effecting a consumer transaction at all times relevant herein by collecting and applying payments pursuant to the Note and Mortgage for its own benefit.

100. Ms. Alvarez was and is Ditech's customer at all times relevant to the allegations herein.

101. In connection with the consumer transaction, Ditech committed unfair or deceptive practices or acts in violation of Ohio Revised Code Sections 1345.02 and 1345.03 and further defined in the Substantive Rules Chapter 109:4-3 *et seq.* of the Ohio Administrative Code promulgated pursuant to 1345.05 of the Ohio Revised Code. At all times material, the consumer transaction upon which this action is based occurred after the rules defining

      these practices to be deceptive were adopted pursuant to 1345.05(B) or determined by a Court of Ohio to be in violation of R.C. 1345.02 or 1345.03.

102. Ditech's failures to adhere to RESPA, its failure to correct its incorrect billing practices, its attempts to collect amounts in excess of what is due under the Mortgage Loan are each separate unfair and deceptive acts and practices prohibited in the context of consumer transactions.

103. Ditech's actions described herein are unfair and deceptive acts or practices prohibited by the CSPA. R.C. 1345.02.

104. Ditech's actions described herein are unconscionable acts or practices as prohibited by the CSPA. R.C. 1345.03.

105. Ditech's actions and inactions as described herein were committed knowingly.

106. For all the reasons stated herein, Ms. Alvarez is entitled to injunctive relief against Ditech's unfair and deceptive acts and practices pursuant to R.C. 1345.09.

107. For all the reasons stated herein, Ms. Alvarez is entitled to declaratory relief from this Court finding Ditech's actions described herein to be unfair and deceptive acts or practices prohibited by R.C. 1345.02 and R.C. 1345.03.

108. As a direct and proximate result of Ditech's unfair, deceptive, and unconscionable acts or practices, Ditech is liable to Ms. Alvarez for her actual damages to be proven at trial; the greater of treble statutory damages or $200.00 per violation; $5,000.00 in noneconomic damages; reasonable attorney fees, interest thereon as provided by law and the costs of this action pursuant to R.C. 1345.09.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** the Ms. Alvarez respectfully prays this Court grants the following against the Defendant:

a. Assume jurisdiction of this case;

b. Award Ms. Alvarez maximum actual, economic, non-economic, statutory, punitive, and other damages to be established at trial allowable under the law.

c. Award Ms. Alvarez actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(F) and R.C. 1345.09.

d. Award Ms. Alvarez the maximum statutory damages in the amount of at least $2,000 for each RESPA violation, plus attorneys' fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

e. Award Ms. Alvarez the greater of treble statutory damages or $200 for each violation of the CSPA including pursuant to R.C. 1345.09;

f. Enjoin Defendant from violating the CSPA as described herein;

g. Declare Defendant's acts and practices to be violations of the CSPA; and

h. Award such other relief as the court deems appropriate.

April 7, 2016

        Respectfully Submitted,

        **BUTTARS, RICHARDSON & SNYDER LLC**

        <u>s/ Randy Richardson</u>
        Randy Richardson, Trial Counsel (0034456)
        Karl W. Snyder (0091219)
        *Attorneys for Plaintiff Rhonda K. Alvarez*
        8235 Old Troy Pike #140
        Huber Heights, OH 45424
        (614) 379-3977
        randy@abkslaw.com
        karl@abkslaw.com

**JURY TRIAL DEMANDED**

Ms. Alvarez respectfully requests a jury trial on all triable issues.

<u>s/ Randy Richardson</u>
Randy Richardson, Trial Counsel (0034456)
